UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL NO: 18-112

v.                                          SECTION: "T"(4)

WILLIAM B. "BART" HUNGERFORD, JR.
TIMOTHY O. MILBRATH

## ORDER

Before the Court is a Motion for Judgment of Acquittal or, Alternatively, for a New Trial filed on behalf of defendant, Timothy O. Milbrath,[1] and adopted by co-defendant, William B. "Bart" Hungerford, Jr.[2] The United States of America has filed an opposition.[3] For the following reasons, the Motion for Judgment of Acquittal or, Alternatively, for a New Trial[4] is **DENIED**.

## BACKGROUND

Timothy O. Milbrath ("Milbrath") and William B. "Bart" Hungerford, Jr. ("Hungerford") were charged with conspiracy to commit wire fraud and mail fraud, conspiracy to commit immigration fraud, conspiracy to launder monetary instruments, and six counts of wire fraud.[5] After a three-week trial, the jury found Hungerford and Milbrath guilty on all counts. At trial, the Government presented evidence detailing Hungerford and Milbrath's operation of the New Orleans Mayor's Office of Economic Development Regional Center ("New Orleans Regional Center") on behalf of the City of New Orleans. Hungerford and Milbrath operated the New Orleans Regional Center through their company, NobleOutReach, LLC. The New Orleans Regional Center

---
[1] R. Doc. 184.
[2] R. Doc. 186.
[3] R. Doc. 191.
[4] R. Doc. 184.
[5] R. Doc. 39.

1

was intended to attract immigration investors seeking to qualify for an EB-5 visa. The EB-5 visa program is administered by U.S. Citizenship and Immigration Service ("USCIS") and permits an immigrant to qualify for a permanent green card if he invests $500,000.00 in a targeted employment area and creates or preserves 10 American jobs. In total, the Government produced evidence showing that 31 investors invested a total of $15.5 million in the defendant's fund, NobleRealEstateFund, LP, with the understanding that their money would be invested in New Orleans-based companies. The investors paid the defendants an additional $1,570,000.00 in service fees to manage their funds.

The Government presented evidence that the defendants funneled all $15.5 million into companies that they owned without disclosing these facts to investors. Hungerford and Milbrath used their companies to pay themselves and their spouses over $9.3 million from investor funds. They also used investor funds to pay employees in Maryland who did work for the defendants' personal companies. None of the immigrant investors qualified for a permanent green card, and none of the investors received any of their money back from the defendants. The Government also presented evidence that Hungerford and Milbrath defrauded another non-immigrant investor of $1,000,000.00. In total, investors lost a total of $18,070,000.00 in Hungerford and Milbrath's scheme.

The defendants have now filed a Motion for Judgment of Acquittal or, Alternatively, for a New Trial[6] contending they are entitled to acquittal due to lack of evidence regarding the conspiracy charges and wire fraud charges. Alternatively, the defendants claim that the jurors' apparent confusion regarding their instructions mandates a new trial.

---

[6] R. Doc. 184.

**LAW AND ANALYSIS**

A motion for judgment of acquittal under Federal Rule of Criminal Procedure 29 "is a challenge to the sufficiency of the evidence to sustain a conviction."[7] When considering the sufficiency of the evidence, the court must determine whether "a rational jury, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense to be satisfied beyond a reasonable doubt."[8] The court determines "only whether the jury made a rational decision, not whether its verdict was correct on the issue of guilt or innocence."[9] "[I]f the fact finder was presented with sufficient evidence to support the verdict reached, that verdict must be upheld."[10] "All reasonable inferences which tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor."[11]

1. **Criminal Conspiracy**

Defendants were convicted of three counts which required proof of a conspiracy: (1) conspiracy to commit wire fraud and mail fraud, (2) conspiracy to commit immigration fraud, (3) conspiracy to launder monetary instruments.[12] Defendants contend the evidence presented at trial focused predominantly on the time-barred charges concerning NOR's operations from 2006 to 2012, and never addressed whether defendants entered any conspiracy or agreement to violate the mail fraud, wire fraud, immigration fraud, or money laundering statutes.

---

[7] *United States v. Brown*, 2012 WL 273163, at *2 (W.D. La. Jan. 26, 2012) (*citing United States v. Uvalle-Patricio*, 478 F.3d 699, 701 (5th Cir. 2007)).
[8] *United States v. Miles*, 360 F.3d 472, 476 (5th Cir. 2004).
[9] *United States v. Dean*, 59 F.3d 1479, 1484 (5th Cir. 1995) (*citations omitted*).
[10] *United States v. Lucio,* 428 F.3d 519, 522 (5th Cir. 2005). *See also United States v. Mack*, 2016 WL 740280, at *1 (M.D. La. Feb. 24, 2016).
[11] *United States v. Burns,* 597 F.2d 939, 940–41 (5th Cir. 1979) (*citations omitted*).
[12] R. Doc. 39.

3

To establish a conspiracy, the Government must prove "an agreement between two or more persons to pursue an unlawful objective" and "the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy[.]"[13] "Direct evidence of a conspiracy is unnecessary; each element may be inferred from circumstantial evidence."[14] "[T]he government does not need to show that the conspiratorial agreement was explicit or formal—proof of a tacit agreement is sufficient."[15]

The Court finds that the Government presented sufficient evidence to support the jury's finding that Defendants were involved in a conspiracy. The testimony of the Government's witness and the documentation introduced into evidence supported a finding of an ongoing conspiracy from 2006 through 2016. The Government introduced emails between Hungerford and Milbrath into evidence showing Defendant's discussion of their plans of getting immigrant investors in and signing up promoters and Defendant's discussion of working well as a team in convincing immigrant investors to move forward on actual investing. Witnesses testified that the Defendants were partners. Several NobleOutReach employees testified that Hungerford and Milbrath were the principals, and that at least one of them reviewed each document before it left the office. The testimony supported that Hungerford handled the business side, while Milbrath's job was investor relations. Bank records introduced into evidence showed that Defendants were both signatories on all the bank accounts for each LLC in the NobleOutReach umbrella. Based on the emails introduced into the record and the testimony by the witnesses at trial, the Court finds the jury was

---

[13] *United States v. Reece*, 938 F.3d 630, 635 (5th Cir. 2019).
[14] *United States v. Garza–Robles*, 627 F.3d 161, 168 (5th Cir. 2010) (*citation omitted*).
[15] *United States v. Freeman*, 434 F.3d 369, 376 (5th Cir. 2005).

presented with sufficient evidence to support the jury's finding of a conspiracy between Defendants.

### 2. **<u>Wire Fraud</u>**

Defendants contend the Government failed to prove beyond a reasonable doubt that they committed wire fraud because the emails underlying Counts 4 though 8 are not part of executing any fraud scheme and the wire transfer in Count 9 occurred long after the alleged fraud scheme.[16] First, Defendants claim the fraud scheme alleged in this case occurred years before the wires underlying Counts 4 through 8. Second, Defendants assert that the 2016 wire alleged in Count 9 was remote in time and inessential to the alleged fraud scheme.

To prove wire fraud, the Government must prove: (1) a scheme or artifice to defraud; (2) material falsehoods; and (3) the use of interstate wires in furtherance of the scheme.[17] Violation of the wire-fraud statute requires the specific intent to defraud, i.e., a "conscious knowing intent to defraud."[18] The wire "need not be an essential element of the scheme"; rather, "[i]t is sufficient for the [wire] to be incident to an essential part of the scheme or a step in [the] plot."[19] An interstate wiring is in furtherance of the scheme where it is "used to further and perpetuate a scheme involving a series of continual frauds, rather than a 'one shot' deception, so that the perpetrator is not indifferent to the fact of who discovers the scheme or bears the loss."[20] Additionally, "[c]ommunications that occur after initial purchase into the fraudulent scheme, designed to lull the victim into a false sense of security, postpone inquiries or complaints, or make the transaction less suspect[,] are mailings in furtherance of the scheme."[21]

---

[16] R. Doc. 184-1.
[17] *United States v. Brooks*, 681 F.3d 678, 700 (5th Cir.2012) (*citations omitted*).
[18] *United States v. Reyes*, 239 F.3d 722, 736 (5th Cir.2001).
[19] *United States v. Barraza*, 655 F.3d 375, 383 (5th Cir. 2011) (*quoting Schmuck v. United States*, 489 U.S. 705, 710-11 (1989)).
[20] *United States v. Mills*, 199 F.3d 184, 189 (5th Cir. 1999) (*citing Schmuck v. United States,* 489 U.S. 705 (1989)).
[21] *United States v. Phipps,* 595 F.3d 243, 246–47 (5th Cir. 2010) (*citation and quotation marks omitted*).

The Court finds that the evidence at trial provided adequate basis for the jury to conclude that the interstate wirings were in furtherance of a continuous series of frauds. The Government introduced evidence establishing that Defendant's scheme developed and continued over several years by continuing to try to bring in investors and hide the nature of the investment fund. The Government showed the jury a promotional video created by Defendants used to continue to lure in investors and introduced documentation showing the Defendants falsified statements to avoid detection in 2013. Defendants took steps to keep a false New Orleans office address by leasing a UPS box on Claiborne Avenue in April 2013. The interstate bank wiring in Count 9 permitted the defendants to gain control of investor funds. The Government produced evidence to show that Defendants wrote themselves checks in 2016 from proceeds of the sale of the Maurepas Food restaurant which was originally purchased with investor funds. The bank wiring, therefore, allowed Defendants to gain control over investors' funds. Accordingly, the Court finds that the Government produced evidence sufficient to support the jury's verdict on Counts 4 through 9.

3. **Motion for a New Trial**

The defendants move the court for a new trial based on "the interest of justice" on the basis that the Court's response to juror questions inadequately cleared any confusion.[22] The Fifth Circuit holds that "the trial court should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict."[23] A motion for new trial "is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial ... should be invoked only in exceptional cases[.]"[24] "When a deliberating jury expresses confusion and difficulty over an issue submitted to it, the trial court's

---

[22] R. Doc. 184.
[23] *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).
[24] *United States v. Scroggins*, 485 F.3d 824, 831 (5th Cir. 2007) (*quoting United States v. Robertson*, 110 F.3d 1113, 1120 n. 11 (5th Cir. 1997)).

task is to clear that confusion away with concrete accuracy."²⁵ "A trial judge, of course, enjoys wide latitude in deciding how to respond to such questions."²⁶ The Fifth Circuit's jurisprudence asks "whether the court's answer was reasonably responsive to the jury's question and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it."²⁷ "If, in response to a jury question, the trial court directs the jury's attention to the original instructions, the response will be deemed sufficient if the original charge is an accurate statement of the law."²⁸

Defendants contend the jury was clearly confused and that the Court was unable to provide further specificity to clarify the instructions. The jury asked a question regarding whether any of the Fund's immigrant investors had received Requests for Evidence in connection with any I-526 applications that were later denied by USCIS. With the agreement of all parties, the Court responded that there was no such evidence of RFEs for a denied I-526 in the record. The jury submitted three inquiries regarding the elements of wire fraud. The jury asked whether the wire fraud alleged in Count 9 relied upon on the emails sent in Counts 4 through 8 and what Counts 4 through 8 were "about" – whether the offense relied on the "location of the email… or the contents of the email…". With the agreement of all parties, the Court referred the jury to the instructions previously given. Finally, the jury wrote, "We have looked @ cause on pg 33 – confused!! Can you better explain the underlined section? Or can we talk?" With the agreement of all parties, the Court responded, "I am sorry, but you must rely upon your own understanding of the instructions." The Court used pattern instructions and consistently directed the jury back to those instructions.

---

²⁵ *United States v. Stevens*, 38 F.3d 167, 170 (5th Cir. 1994).
²⁶ *Id*.
²⁷ *See United States v. Duvall*, 846 F.2d 966, 977 (5th Cir. 1988).
²⁸ *United States v. Marshall*, 283 F. App'x 268, 279 (5th Cir. 2008) (*citing United States v. Arnold*, 416 F.3d 349, 359 n. 13 (5th Cir. 2005)).

7

Neither party objected to the Court's answers, and Defendants do not argue that there were any incorrect statements of the law. Thus, the Court finds the motion for new trial should be denied.

## **CONCLUSION**

For the foregoing reasons, the Motion for Judgment of Acquittal or, Alternatively, for a New Trial[29] is **DENIED**.

**New Orleans, Louisiana**, on this 14th day of April, 2020.

                                        **GREG GERARD GUIDRY**
                                        **UNITED STATES DISTRICT JUDGE**

---

[29] R. Doc. 184.